# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

June 6, 2012

William James Nicoll, Esq.
Jenkins, Block & Assocs., P.C.
1040 Park Avenue
Suite 206
Baltimore, MD   21214

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD   21201

**Re: Donald Alimo o/b/o Patricia Alimo v. Michael J. Astrue,**
**Commissioner of Social Security, PWG-09-2772**

Dear Counsel:

Pending before the undersigned, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Alimo's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Nos. 8,15,30). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion and GRANTS the Plaintiff's Alternative Motion for Remand.

Patricia Alimo (sometimes referred to as "Ms. Alimo," "Claimant," or "Plaintiff" ) applied for DIB and SSI on April 23, 2005, alleging that she was disabled as of January 1, 2004, due to bipolar disorder, chronic neck and back pain, and heart problems.(Tr. 29, 118). Her applications were denied initially and upon reconsideration. (Tr. 58-60, 68-71). After a hearing held on February 1, 2007, an administrative law judge ("ALJ") denied Ms. Alimo's claims in a decision dated May 10, 2007. (Tr. 282-294, 439-469). The Appeals Council granted Ms. Alimo's request for review, vacated the ALJ's decision and remanded the case for further consideration of her disability status prior May 11, 2007. (Tr. 295-300). A second hearing was held before the same ALJ on September 18, 2008. (Tr. 43-53). On June 17, 2009 the ALJ issued a second decision denying Plaintiff's claims. The ALJ

concluded that prior to May 11 2007, Claimant had degenerative disc disease, bipolar disorder, generalized anxiety disorder, and a personality disorder, all of which were severe. Next the ALJ concluded that Ms. Alimo's impairments did not meet, or medically equal, any of the Listings of Impairments.  The ALJ also found that prior to May 11, 2007, Ms. Alimo retained the residual functional capacity ("RFC") to perform a range of light work. Based on her RFC, the ALJ found that Ms. Alimo could not perform any of her past relevant work ("PRW").  Finally, relying on the testimony received from a vocational expert ("VE") at the first hearing, the ALJ determined that there was work available in the local and national economies that Ms. Alimo could perform, and therefore, she was not disabled prior to May 11, 2007. (Tr. 26-39, 467).  On September 1, 2009, the Appeals Council denied Ms. Alimo's request for review, making her case ready for judicial review. (Tr. 1-5).

The central issue in this case is whether the ALJ's determination that Ms. Alimo was not disabled prior to May 11, 2007, is supported by substantial evidence.  Claimant argues that the ALJ erred by failing properly to consider the opinions of her treating physician, Dr. Gergana Dimitrova, in determining that she was not disabled prior to May 11, 2007.  The Commissioner argues that the ALJ properly assessed the opinions of Claimant's treating physicians in accordance with the Regulations.

20 C.F.R. §404.1527(d) requires the ALJ to give a treating physician's opinion controlling weight if two conditions are met: (1) it is supported by medically acceptable clinical and laboratory diagnostic techniques and (2) it is not inconsistent with the other substantial evidence in the record.  *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).  While treating source opinions on issues reserved to the Commissioner--such as determining a claimant's RFC--are not entitled to controlling weight, the ALJ nonetheless must evaluate all of the evidence in the record to determine the extent to which the treating physician's opinion is supported by the record.  When the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ then must determine what weight, if any, to give that opinion and must give "specific reasons" for that determination.  SSR 96-2p (1996 WL 374188, *5).  Further, the ALJ must consider various factors in determining what weight should be given including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by

relevant evidence;(4) consistency between the opinion and the record as a whole;(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Secretary's attention which tend to support or contradict the opinion. 20 C.F.R. §404.1527(d)(2)(i), (d)(2)(ii)(3)-(6); see also SSR 96-5p; SSR 96-2p.

After review of the record and the ALJ's decision, I cannot conclude that the ALJ properly applied the foregoing standards when evaluating the opinions of Claimant's doctor. Dr. Dimitrova had been Claimant's doctor since January 2004, and in this capacity completed various reports and assessments including: a medical report form dated May 23, 2005; a welfare assessment form dated June 2, 2005; a mental residual functional capacity assessment ("MRFCA") dated February 16, 2007; and a mental medical assessment of ability to do work related activities dated June 28, 2007. Exhs. 4-F, 5-F, 19-F, 23-F (Tr. 34, 183-188, 189-192, 262-265, 375-378).

In May 2005, Dr. Dimitrova's records stated that Ms. Alimo had "marked" limitations in maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. 191). In February 2007, Dr. Dimitrova stated Claimant was "markedly" limited in at least 14 areas of functioning. (Tr. 262-264). The ALJ rejected these findings, stating that they were:

> not supported by detailed contemporaneous treatment records as summarized above, showing no more than moderate mental symptoms and limitations when examined, as it relates to the period prior to May 11, 2007, nor by the consultative examination findings of Dr. Gorra and Dr. Harkhani during the period at issue.
> (Tr. 36).

The ALJ's opinion does not accurately describe the record. In January 2004, as well as in April and May, 2005, Dr. Dimitrova's office notes stated that Ms. Alimo had mood swings, severe irritability, depression, and manic symptoms.(Tr. 210-212, 217-218). Throughout the years of treating Claimant Dr. Dimitrova consistently assessed Ms. Alimo's Global Assessment of Functioning ("GAF") as being between 45-50. (Tr. 191, 210-227). A GAF of 50 is evidence of "serious" symptoms.[1] (Tr. 36). In his

_____

1 Medical reports by psychiatrists and psychologists often contain assessments of psychological, social, and occupational functioning known as the The Global Assessment of Functioning ("GAF") Scale. A GAF code between 50 and 41 is defined as

discussion of Claimant's mental impairment, the ALJ stated that Dr. Dimitrova's assessment of Ms. Alimo's GAF was inconsistent with her treatment notes, which, according to the ALJ, reflected only moderate symptoms.  However, there is evidence in the record that supports Dr. Dimitrova's findings that Claimant's symptoms were serious during the relevant time period, which the ALJ failed to discuss.

For example, Dr. Aaron Suansilppongse, a state agency non-examining reviewing physician, completed a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity Assessment ("MRFCA") of Claimant on October 24, 2007. *See* Exhibits 27-F and 28-F. In the PRTF, Dr. Suansilppongse stated that Claimant had "moderate" limitations in maintaining social functioning, "marked" limitations in concentration, persistence, and pace and that she experienced "one or two" episodes of decompensation, each of extended duration.(Tr. 402).  These medical findings clearly contradict the ALJ's finding that Ms. Alimo had only "moderate" limitations in concentration, persistence, and pace and that she had experienced "no" episodes of decompensation. (Cf. Tr. 31, 402, 407-409).

Similarly in the MRFCA, Dr. Suansilppongse stated that Ms. Alimo had "marked" limitations in her abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and that she had "moderate" limitations in her abilities to: understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; ability to make simple work related decisions; interact appropriately with the general public; accept instructions from respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic

---

serious symptoms (e.g. suicidal ideation, severe obsessional rituals frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, p.32.(emphasis added).

goals or make plans independently of others. (Tr. 406-408).

The ALJ referred to one of Dr. Suansilppongse's reports in a cursory fashion, but failed to discuss its significance when he determined that Dr. Dimitrova's opinions were not persuasive. Nor did the ALJ reference Dr. Suansilppongse's reports when he discussed his findings at steps four and five of the sequential evaluation with respect to Ms. Alimo's mental RFC. (Tr.  31, 34-37) See FN 2, *infra*.  Because of the ALJ's failure to discuss in a meaningful way the findings of Dr. Dimitrova and Dr. Suansilppongse, I cannot determine whether findings are supported by substantial evidence because the ALJ failed to explain the weight given to all the relevant evidence, particularly why he failed to credit the findings of Dr. Suansilppongse and Dr. Dimitrova. *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984) *see also* SSR 96-6p (1996 WL 374180).  Therefore, the Court cannot determine whether the hypothetical presented to the VE in this case adequately reflected all of the Claimant's limitations. (Tr. 467).

Dr. Suansilppongse's opinions clearly lend support to Dr. Dimitrova's findings.  In summarizing the various state agency physicians' reports that were submitted in this case, however, the ALJ failed to explain the amount of weight that he afforded Dr. Suansilppongse's opinions. (Tr. 36-37).  Without adequate explanation, the Court is not able to determine whether the ALJ considered this evidence and, if it was rejected, the reason for having done so, making a "meaningful review" impossible. *DeLoatche v. Heckler*, 715 F.2d 148,150 (4th Cir. 1983). *See also* SSR 96-8p (1996 WL 374184 *7 (S.S.A.)).

In sum, I find the ALJ's basis for rejecting the opinions of Claimant's treating physician and the agency reviewing physician is not supported by substantial evidence. The ALJ failed to provide the required detailed analysis at step four of the sequential evaluation. For that reason, the functional limitations resulting from Claimant's severe impairments as of May 2007 may be more limiting than those found by the ALJ, and the Court remands this case to the ALJ to properly evaluate all the evidence of record and to clearly explain the weight given to the evidence that supports Plaintiff's claim.

    For the reasons given, this Court DENIES the Commissioner's
Motion, REVERSES the final decision of the Commissioner and
REMANDS this case to the agency for further proceedings.   A
separate Order shall issue.

                              Sincerely,


                              /s/
                              Paul W. Grimm
                              United States Magistrate Judge